ROSCOE BLEVINS AND WIFE, ETHEL BLEVINS; JAMES FARRINGTON AND WIFE, RUBY FARRINGTON; LLOYD GRAHAM AND WIFE, LINDA GRAHAM; EURA HART, WIDOW; JEAN B. KEY, SINGLE; ROBERT L. LEWIS AND WIFE, SHIRLEY LEWIS; HETTIE SAPP, WIDOW; VAUGHN WELCH AND WIFE, MINNIE WELCH; AND WAYNE WILLIAMS, SINGLE, PLAINTIFFS-APPELLEES v. ALVIN "JUNIOR" DENNY; REGGIE TESTERMAN; DANA BROWN; SHARON COWAN; AND LINDA GRAHAM, MEMBERS OF THE BOARD OF ALDERMEN OF THE TOWN OF LANSING, AND THE TOWN OF LANSING, DEFENDANTS-APPELLANTS

No. 9323DC629

(Filed 17 May 1994)

1. **Appeal and Error § 118 (NCI4th) — water and sewer system — required connection — action against Town — summary judgment for Town denied — immediately appealable**

The denial of summary judgment for defendant Town of Lansing was immediately appealable in an action against the Town arising from an ordinance requiring water and sewer connections.

Am Jur 2d, Appeal and Error § 14.

Reviewability of order denying motion for summary judgment. 15 ALR3d 899.

2. **Municipal Corporations § 413 (NCI4th) — water and sewer system — required connection — governmental function — Town's tort liability — immunity**

The Town of Lansing was performing a governmental function when it passed an ordinance mandating connection to a water and sewer system and is immune from tort liability for depriving plaintiffs of their wells and septic systems and for unjust enrichment.

Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 87 et seq.

Comment Note. — Municipal immunity from liability for torts. 6 ALR2d 1198.

Municipal operation of sewage disposal plant as governmental or proprietary function, for purposes of tort liability. 57 ALR2d 1336.

BLEVINS v. DENNY

[114 N.C. App. 766 (1994)]

3. **Estoppel § 3 (NCI4th)— action to enjoin ordinance requiring water and sewer connection—valid exercise of police power— no estoppel**

The Town of Lansing could not be estopped from requiring connection to a water and sewer system where the Town Clerk/Finance officer had sent town residents a letter before the referendum stating that the Town had no intention of requiring hook-ups and informed residents after the construction of the system that mandatory hook-ups were the Town's only option. The ordinance mandating connection to the water and sewer system was a valid exercise of the Town's police power.

**Am Jur 2d, Estoppel and Waiver §§ 114-133.**

**Comment Note.— Applicability of doctrine of estoppel against government and its govermental agencies. 1 ALR2d 338.**

4. **Eminent Domain § 295 (NCI4th)— required water and sewer connection—taking—limitation**

Actions asserting a "taking" are to be initiated within 24 months of the date of the taking of the affected property or the completion of the project involving the taking, whichever shall come later. N.C.G.S. § 40A-51(a).

**Am Jur 2d, Eminent Domain §§ 498, 499.**

Appeal by defendants from order entered 18 May 1993 by Judge Michael E. Helms in Ashe County District Court. Heard in the Court of Appeals 9 March 1994.

*Kilby, Hodges & Hurley, by John T. Kilby, and Vannoy & Reeves, by Jimmy D. Reeves, for plaintiffs-appellees.*

*Johnston and Johnston, by John C. Johnston, for defendants-appellants.*

JOHNSON, Judge.

The Town of Lansing in Ashe County, North Carolina (hereafter, Town) conducted a bond referendum on 17 June 1986 in order to construct a water and sewer system. A week prior to the vote on the bond referendum, by letter dated 9 June 1986 to the town's residents, the Town Clerk/Finance Officer urged support of the bond referendum, stating that the Town had no intention of requir-

ing mandatory water hook-ups to the proposed water and sewer system. The bond referendum passed by an overwhelming majority.

Following the construction of the Town's water and sewer system, the Town Clerk/Finance Officer informed the citizens of the Town that because of the few resident taxpayers located within the Town and the large amount of money necessary to complete the project, mandatory hook-ups were the Town's only option, unless taxes were raised to a prohibitive amount.

On 17 August 1989, the Town passed an ordinance requiring every person owning improved property within the corporate limits to connect to the Town's water and sewer system. An amendment to the ordinance followed, pursuant to North Carolina General Statutes § 160A-175 (Cum. Supp. 1993), establishing fines and penalties for violation of the ordinance.

In a separate action to which they counterclaimed, Roscoe and Ethel Blevins were named defendants in an action brought by the Town, requiring that they connect to the Town's water and sewer system or be subject to fines and penalties. The Blevins then joined with other residents who have refused to comply with the Town's ordinance in the lawsuit *sub judice* against the Town and Town officials. Plaintiff residents in this case asked the court to grant a writ of mandamus requiring defendants to operate the water and sewer system without requiring plaintiff residents to connect to said system; for a permanent injunction preventing defendants from requiring said hook-up; for compensation for plaintiff residents' private wells and septic systems of which they claim they will be deprived; for a survey of the corporate limit; and for damages on the theory of unjust enrichment. Defendants answered, claiming defenses of laches and the statute of limitations among others, and counterclaiming against plaintiff residents for their noncompliance with the Town's ordinance. Plaintiff residents filed a reply to defendants' counterclaim. With plaintiff residents' consent, defendants amended their reply to include the defense of sovereign immunity. Defendant Town made a motion for summary judgment which was denied on 18 May 1993, and defendant Town gave notice of appeal to this Court.

The issue in both this case and a companion case filed simultaneously, *Town of Lansing v. Key*, No. 9323DC640 (N.C. App. filed 17 May 1994), is the same: did the trial court properly deny defendant Town's motion for summary judgment as a matter of law?

BLEVINS v. DENNY

[114 N.C. App. 766 (1994)]

[1] We note that at the trial level, the Town argued their right to appeal this interlocutory order pursuant to *Corum v. University of North Carolina*, 97 N.C. App. 527, 389 S.E.2d 596, *stay allowed*, 326 N.C. 595, 394 S.E.2d 453, *disc. review and writ allowed and dismissal denied*, 327 N.C. 137, 394 S.E.2d 170 (1990), *aff'd in part; rev'd in part on other grounds*, 330 N.C. 761, 413 S.E.2d 276 (1992). The motion for summary judgment in *Corum* was based on immunity defenses to a section 1983 claim. In *Corum*, we stated:

> Generally, the denial of summary judgment does not affect a substantial right and is not appealable. (Citations omitted.) In the instant case, however, we hold that the denial of summary judgment affected a substantial right and is subject to review. We reach this conclusion in light of the holding of the United States Supreme Court in *Mitchell v. Forsyth*, 472 U.S. 511, 86 L.Ed.2d 411 (1985), a case in which the defendant federal official's summary judgment motions, on the grounds of absolute and qualified immunity, had been denied in District Court. In *Mitchell*, the Supreme Court held that "denial of a substantial claim of absolute immunity is an order appealable before final judgment, for the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." 472 U.S. at 525, 86 L.Ed.2d at 424 (citations omitted). Similarly, the Court concluded that denial of a public official's claim of qualified immunity from suit, to the extent that it turns on the legal questions of whether the conduct complained of violated "clearly established law" . . . is also appealable as a "final decision" within the meaning of 28 U.S.C. sec. 1291.

*Corum*, 97 N.C. App. at 531, 389 S.E.2d at 598. In *Mitchell*, the United States Supreme Court went on to explain that

> entitlement [to qualified immunity] is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.
>
> . . .
>
> An appealable interlocutory decision must satisfy two additional criteria: it must "conclusively determine the disputed question," *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 57 LEd2d 351, 98 S.Ct 2454 (1978), and that question must

involve a "clai[m] of right separable from, and collateral to, rights asserted in the action," [*Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 93 L.Ed. 1528, 69 S.Ct. 1221 (1949).] The denial of a defendant's motion for dismissal or summary judgment on the ground of qualified immunity easily meets these requirements.

*Corum*, 97 N.C. App. at 531-32, 389 S.E.2d at 598, *quoting Mitchell*, 472 U.S. at 526-27, 86 L.Ed.2d at 425-26. (Emphasis retained.) We find the denial of the Town's summary judgment motion in the instant case immediately appealable.

[2] Upon examination of the evidence in this case, we find that defendant Town was performing a governmental function when it passed the ordinance mandating connection to the water and sewer system, and that therefore, the Town is immune from tort liability. (*See Rhyne v. Mount Holly*, 251 N.C. 521, 112 S.E.2d 40 (1960) for a list of situations in which municipalities have been held immune by reason of being engaged in governmental functions.) In support of our holding, we cite *McNeill v. Harnett County*, 327 N.C. 552, 572, 398 S.E.2d 475, 486 (1990), where the North Carolina Environmental Management Commission found unsanitary conditions and gave the Buies Creek-Coats Water and Sewer District permission to proceed to construct a sewer system to serve the district, and our Supreme Court held that "the ordinances mandating connection to the county-operated sewer system, and the payment of connection charges and monthly user fees for the sewer service are valid exercises of the police power[.]" *See* North Carolina General Statutes § 160A-317 (1993), entitled "Power to require connections to water or sewer service and the use of solid waste collection services," which authorizes municipalities to require citizens to either connect to a water or sewer line, or, to avoid hardship, to pay a periodic availability charge. (*See also McCombs v. City of Asheboro*, 6 N.C. App. 234, 240, 170 S.E.2d 169, 173 (1969), where our Court said "construction of a sewerage system is a governmental function[.]")

[3] A reading of the letter sent by the Town Clerk/Finance Officer to the citizens of Lansing indicates that "50% of the homes or businesses surveyed [by the Ashe County Health Department in 1985] had illegal discharge of sewage, [and that] 10% of existing septic tanks were not functioning[.]" The letter continues:

> The study clearly indicates that the sewage disposal problems in Lansing are widespread and serious and are posing a definite threat to our health and well-being. . . .

> The officials of the Ashe County Health Department are coming under increased pressure from Raleigh and elsewhere to do something about Lansing's violators of State health laws.

The letter further indicates the efforts made by the Lansing town officials to secure grant monies and a FmHA loan to go toward the costs of the new water and sewer system. Although there was no evidence to indicate that the purchase of the new water and sewer system at the time of the bond referendum was mandatory, it appears it was inevitable. Therefore, we find the ordinance mandating connection to the water and sewer system a valid exercise of the Town's police power and find that the Town cannot be estopped from requiring said connection.

[4] Additionally, we note that actions asserting a "taking" are to be "initiated within 24 months of the date of the taking of the affected property or the completion of the project involving the taking, whichever shall occur later." North Carolina General Statutes § 40A-51(a)(1984).

Reversed and remanded for judgment to be entered in favor of defendant Town.

Judges GREENE and JOHN concur.